## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| TIM FLYNN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FITBIT, INC., JAMES PARK, ERIC N. FRIEDMAN, LAURA J. ALBER, MATTHEW BRONBERG, GLENDA FLANAGAN, BRADLEY M. FLUEGEL, STEVEN MURRAY, CHRISTOPHER PAISLEY, MAGNOLIOPHYTA INC., and GOOGLE LLC, <br><br> Defendants. | X ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  Civil Action No. _____ <br><br> **CLASS ACTION** <br><br> **JURY TRIAL DEMAND** |

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Tim Flynn ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### NATURE OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public stockholders of Fitbit, Inc. ("Fitbit" or the "Company") against Fitbit's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to Google LLC through its wholly-owned subsidiary Magnoliophyta Inc. (collectively, "Google").

2.     Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading preliminary proxy statement (the "Proxy") to be filed with the United States Securities and Exchange Commission ("SEC") on November 25, 2019. The Proxy recommends that Fitbit shareholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby Fitbit is acquired by Google. The Proposed Transaction was first disclosed on November 1, 2019, when Fitbit and Google announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Google will acquire all of the outstanding shares of common stock of Fitbit for $7.35 per share (the "Merger Consideration"). The deal is valued at approximately $2.1 billion and is expected to close in 2020.

3.     The process leading to the execution of the Merger Agreement was tainted by allowing the Company's co-founders to take part, given their control over the Company with their combined voting power. Furthermore, the Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the sales process, financial projections prepared by Fitbit management, and the financial analyses conducted by Qatalyst Partners LP ("Qatalyst"), Fitbit's financial advisor.

4.     For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disseminated to Fitbit's shareholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the defendants' violations.

**PARTIES**

5.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock

of Fitbit.

6.      Defendant Fitbit is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 199 Fremont Street, 14th Floor, San Francisco, California 94105. Fitbit common stock trades on NYSE under the ticker symbol "FIT."

7.      Defendant James Park ("Park") has been President, Chief Executive Officer ("CEO") and a director of the Company since 2007. Defendant Park has been Chairman of the Board since 2015.

8.      Defendant Eric N. Friedman ("Friedman") has been a director of the Company since 2007. Defendant Friedman currently serves as Chief Technology Officer.

9.      Defendant Laura J. Alber ("Alber") has been a director of the Company since 2016.

10.      Defendant Matthew Bromberg ("Bromberg") has been a director of the Company since 2018.

11.      Defendant Glenda Flanagan ("Flanagan") has been a director of the Company since 2016.

12.      Defendant Bradley M. Fluegel ("Fluegel") has been a director of the Company since 2018.

13.      Defendant Steven Murray ("Murray") has been a director of the Company since 2013.

14.      Defendant Christopher Paisley ("Paisley") has been a director of the Company since 2015.

15.      Defendants James, Friedman, Alber, Bromberg, Flanagan, Fluegel, Murray and Paisley are collectively referred to herein as the "Board" or the "Individual Defendants."

16.     Defendant Google LLC is a Delaware limited liability company based at 1600 Amphitheatre Parkway, Mountain View, California 94043.

17.     Defendant Magnoliophyta Inc. is a Delaware corporation and is a wholly-owned subsidiary of Google LLC.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

19.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

20.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) a significant amount of the conduct at issue took place and had an effect in this District; and (ii) Fitbit is incorporated in this District.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of Fitbit common stock and their successors in interest and/or their transferees, except defendants and any person, firm, trust, corporation or other entity related to or affiliated with the defendants (the "Class").

22.     This action is properly maintainable as a class action for the following reasons:

(a)    The Class is so numerous that joinder of all members is impracticable. As of October 28, 2019, Fitbit had approximately 228.8 million shares of Class A common stock outstanding.

(b)    Questions of law and fact are common to the Class, including, *inter alia*, the following:

(i)    Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(ii)    Whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

(iii)    Whether Plaintiff and other members of the Class would suffer irreparable injury if the Proposed Transaction is consummated as presently anticipated; and

(iv)    Whether the Class is entitled to injunctive relief or damages as a result of Individual Defendants' wrongful conduct.

(c)    Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d)    Plaintiff's claims are typical of those of the other members of the Class.

(e)    Plaintiff has no interests that are adverse to the Class.

(f)    The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g)    Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h)    Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## SUBSTANTIVE ALLEGATIONS

### A.  Background of the Company and the Proposed Transaction

23.    Defendants Park and Friedman co-founded Fitbit in 2007, which offers wearable technology, including smartwatches and health and fitness trackers, as well as software and services that provide users with data analytics and virtual coaching. Fitbit's devices track daily steps, heart rate, sleep duration, or allow users to receive calls.

24.    On November 1, 2019, the Board approved Fitbit's entry into the Merger Agreement with Google.

25.    According to the press release issued on November 1, 2019 announcing the Proposed Transaction:

### Fitbit to be Acquired by Google

**SAN FRANCISCO, 1 November 2019** - Fitbit, Inc. (NYSE: FIT) today announced that it has entered into a definitive agreement to be acquired by Google LLC for $7.35 per share in cash, valuing the company at a fully diluted equity value of approximately $2.1 billion.

"More than 12 years ago, we set an audacious company vision - to make everyone in the world healthier. Today, I'm incredibly proud of what we've achieved towards reaching that goal. We have built a trusted brand that supports more than 28 million active users around the globe who rely on our products to live a healthier, more active life," said James Park, co-founder and CEO of Fitbit. "Google is an ideal partner to advance our mission. With Google's resources and global platform, Fitbit will be able to accelerate innovation in the wearables category, scale faster, and make health even more accessible to everyone. I could not be more excited for what

lies ahead."

"Fitbit has been a true pioneer in the industry and has created terrific products, experiences and a vibrant community of users," said Rick Osterloh, Senior Vice President, Devices & Services at Google. "We're looking forward to working with the incredible talent at Fitbit, and bringing together the best hardware, software and AI, to build wearables to help even more people around the world."

Fitbit pioneered the wearables category by delivering innovative, affordable and engaging devices and services. Being "on Fitbit" is not just about the device - it is an immersive experience from the wrist to the app, designed to help users understand and change their behavior to improve their health. Because of this unique approach, Fitbit has sold more than 100 million devices and supports an engaged global community of millions of active users, utilizing data to deliver unique personalized guidance and coaching to its users. Fitbit will continue to remain platform-agnostic across both Android and iOS.

Consumer trust is paramount to Fitbit. Strong privacy and security guidelines have been part of Fitbit's DNA since day one, and this will not change. Fitbit will continue to put users in control of their data and will remain transparent about the data it collects and why. The company never sells personal information, and Fitbit health and wellness data will not be used for Google ads.

The transaction is expected to close in 2020, subject to customary closing conditions, including approval by Fitbit's stockholders and regulatory approvals.

Qatalyst Partners LLP acted as financial advisor to Fitbit, and Fenwick & West LLP acted as legal advisor.

**B. The Proposed Transaction is the Product of a Conflicted Process**

26.    Defendant Park is the CEO of Fitbit, Chairman of the Board and a co-founder of the Company. He currently holds 34% of the total voting power of Fitbit. Defendant Friedman is the Chief Technology Officer and a co-founder of Fitbit. He holds 36.4% of the total voting power of Fitbit. And the Board allowed defendant Park and "senior management" to lead the sales process.

27.    At a meeting on April 26, 2019, the Board discussed exploring Fitbit's strategic alternatives. The Board discussed that it would be helpful to have a financial advisor to be a part of the preliminary discussions, and decided to discuss strategic alternatives on July 1, 2019.

Between April 26 and July 1, members of senior management met with financial advisors and essentially selected Qatalyst.

28.     The July 1, 2019 meeting included discussions on Qatalyst's preliminary financial perspectives on the Company, designing a sales process, and third parties that might be potentially interested in acquiring Fitbit. The Proxy is silent as to whether the Board decided to start a sales process, or whether the Board decided which parties to contact concerning their interest in acquiring Fitbit. Yet, "at the direction of the Board," members of senior management worked with Qatalyst to contact nine strategic parties, including Google.

29.     The Board met on July 25, 2019 and received an update on the outreach. From then until October 8, 2019, the Board did not have a meeting or call concerning the sales process. Instead, over the next two months defendant Park held meetings with Party A and members of Fitbit's senior management held meetings with Google.

30.     When the deadline for initial bids approached, no party submitted a proposal. Despite informing Qatalyst on September 19, 2019 that it was not prepared to submit an offer, Google noted that members of Google's executive team wanted to meet with defendant Park to discuss a potential transaction. Defendant Park met with members of Google's executive team on September 24 and 25, 2019. One week later, Google submitted a proposal to acquire Fitbit.

31.     The Board met on October 8, 2019 to discuss the status of discussions with Party A and Google. The Board met again on October 10, 2019 to discuss Google's proposal, and at that meeting directed Qatalyst to counter at $6.00 per share, and to inform Party A that it needs to submit a proposal as soon as possible. The next day Google submitted a revised offer, which was topped by Party A the morning of October 12, 2019. Members of senior management directed Qatalyst to go back to Google about increasing its offer, which it did. Then Qatalyst went back to

Party A about increasing its offer. The Board met that day and directed Qatalyst to inform Google and Party A to submit their best and final offers within a few hours. When only Google submitted a revised offer, the Board agreed to accept Google's offer. But when Party A submitted a higher offer later that evening, defendant Park decided to go back to Google to try and increase its offer. The next day Google did increase its offer, and defendant Park accepted the offer without discussing with the Board first. The Board ratified defendant Park's action on October 14, 2019.

32.     Approximately two weeks later, on October 31, 2019, the Board approved the Proposed Transaction.

### C. Fitbit's Officers Stand to Receive Benefits Unavailable to the Class

33.     The Proxy acknowledges that the Company's executive officers have interests in the merger that may differ from those of the stockholders and may create conflicts of interest.

34.     Options, restricted stock units and performance stock units that have been awarded to and are held by Fitbit's executive officers and directors will vest and be converted into the right to receive either the Merger Consideration or another amount. The treatment of these equity awards, in addition to benefits provided to executive officers through offer letters, employment agreements and executive retention agreements, will create a windfall for Fitbit's executive officers and directors that is unavailable to the common stockholders. The members of the Board and the executive officers stand to gain handsomely just from their equity award holdings, as they will receive more than $63.9 million. And as demonstrated in the following chart, the executive officers of Fitbit in total stand to receive up to $23.4 million, if they are let go without "cause" or voluntarily leave for "good reason" after the Proposed Transaction closes:

| Named Executive Officer | Cash | Equity Awards | Heath Insurance Premiums | Total |
|---|---|---|---|---|
| James Park | $3,000,000 | $8,348,513 | $14,937 | $11,363,450 |
| Eric Friedman | $796,250 | $3,875,537 | $29,430 | $4,701,217 |
| Ronald Kisling | $739,846 | $2,219,825 | $9,958 | $2,969,629 |
| Andy Missan | $780,362 | $1,567,762 | $30,016 | $2,378,140 |
| Jeff Devine | $704,615 | $1,333,724 | $29,903 | $2,068,242 |

35.     Three of the executive officers will receive cash retention payments if they stay on after the Proposed Transaction closes. The same executive officers were also granted Fitbit restricted stock units valued at $110,250 that will vest over two years. The special compensation is a benefit that Fitbit's other stockholders will not benefit from.

36.     Finally, defendants Park and Friedman have received offers of employment from Google. The offer letter for defendant Park includes an annual salary of $475,000, a retention bonus of $16 million, and $11 million in restricted stock units to acquire the Class C stock of Alphabet, Google's parent company. Defendant Friedman's offer letter includes an annual salary of $450,000, a retention bonus of $7 million, and $5 million in restricted stock units to acquire Alphabet Class C stock. None of the other executive officers have received similar offers of employment from Google.

### D.  The Preclusive Deal Protection Devices

37.     As part of the Merger Agreement, defendants agreed to certain preclusive deal protection devices that ensure that no competing offers for the Company will emerge.

38.     By way of example, Section 6.02(a) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting or encouraging the submission of an acquisition proposal. Section 6.02(a) further demands that the Company cease and terminate all discussions or negotiations with any party concerning an acquisition proposal.

39.     Despite already locking up the Proposed Transaction by agreeing not to solicit alternative bids, the Board consented to additional provisions in the Merger Agreement that further guarantee the Company's only suitor will be Google. For example, pursuant to Section 6.02(f) of the Merger Agreement, the Company must notify Google of any offer, indication of interest, or request for information made by an unsolicited bidder. That includes the identity of any party making a proposal and the material terms of that proposal. Thereafter, should the Board determine that the unsolicited offer is superior, Section 6.02(e) requires that the Board grant Google four (4) business days to negotiate the terms of the Merger Agreement to render the superior proposal no longer superior. In other words, the Merger Agreement gives Google access to any rival bidder's information and allows Google a free right to top any superior offer. Accordingly, no rival bidder is likely to emerge and act as a stalking horse for Fitbit, because the Merger Agreement unfairly assures that any "auction" will favor Google and allow Google to piggy-back upon the due diligence of the foreclosed second bidder.

40.     In addition, pursuant to Section 8.03(a) of the Merger Agreement, Fitbit must pay Google a termination fee of $80 million if the Company decides to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer.

41.     Ultimately, these preclusive deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide

an effective "fiduciary out" under the circumstances. Likewise, these provisions also foreclose any likely alternate bidder from providing the needed market check of Google's inadequate offer price.

**E.   The Materially Incomplete and Misleading Proxy**

42.     The Individual Defendants must disclose all material information regarding the Proposed Transaction to Fitbit stockholders so that they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

43.     On November 25, 2019, defendants filed the Proxy with the SEC. The purpose of the Proxy is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote their shares in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff and the Class. Without such information, Fitbit shareholders cannot make a fully informed decision concerning whether or not to vote in favor of the Proposed Transaction.

### *Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts*

44.     The Proxy discloses management-prepared financial projections for the Company that are materially misleading. The Proxy indicates that in connection with the rendering of Qatalyst's fairness opinion, Qatalyst reviewed "certain forward-looking information relating to Fitbit, including certain non-public unaudited financial forecasts for Fitbit as a standalone company, prepared by [Fitbit's] management." Accordingly, the Proxy should have, but failed to, provide certain information in the projections that Fitbit's management provided to the Board and Qatalyst.

45.     Notably, defendants failed to disclose the projection line items for "The Projections," including: a) research and development expense; b) sales and marketing expense; c) general and administrative expense; and d) stock-based compensation expense. The Proxy also

fails to disclose the projection line items for "The Advocacy Case," including: a) research and development expense; b) sales and marketing expense; c) general and administrative expense; d) stock-based compensation expense; e) non-GAAP tax adjustment; f) NOPAT; g) capital expenditures; h) depreciation; i) investment in working capital; and j) unlevered free cash flow. This omitted information is necessary for Fitbit stockholders to make an informed decision on whether to vote in favor of the Proposed Transaction.

### Materially Incomplete and Misleading Disclosures Concerning Qatalyst's Financial Analyses

46.    With respect to the *Discounted Cash Flow Analysis,* the Proxy fails to disclose the individual inputs and assumptions utilized to derive the discount rate range of 12.5% to 16.5%. The Proxy further false to disclose the amount of forecasted tax attributes outstanding as of December 31, 2023, the specific statutory tax rate, and the resulting net present value amount of Fitbit's tax attributes. In addition, the Proxy fails to disclose the specific inputs, assumptions and methodologies by which the "estimated net effects of equity issuances and cancellations related to future equity compensation, based on estimates of future dilution" were determined for use in the analysis.

47.    With respect to the *Selected Companies Analysis,* the Proxy fails to disclose what benchmarking analyses, if any, Qatalyst performed for Fitbit relative to the selected companies. The Proxy also fails to disclose how, if at all, Qatalyst accounted for the value of Fitbit's tax savings from future usage of tax attributes.

### Materially Incomplete and Misleading Disclosures Concerning the Flawed Process

48.    The Proxy also fails to disclose material information concerning the sales process. For example, in May 2019, members of Fitbit's senior management met with a financial advisory firm to discuss strategic alternatives. The Proxy does not disclose whether the financial advisory

firm prepared any financial analyses of the Company, as Qatalyst did, before the July 1, 2019 Board meeting.

49.     Qatalyst prepared its preliminary financial perspectives on Fitbit and discussed them with members of the Company's senior management on June 18, 2019. The Proxy does not disclose these preliminary financial perspectives. Qatalyst then provided its preliminary financial perspectives on Fitbit at the July 1, 2019 Board meeting. The Proxy does not disclose these preliminary financial perspectives or whether they differ from the perspectives discussed on June 18, 2019.

50.     The Proxy notes that after the July 25, 2019 Board meeting, Qatalyst and members of Fitbit's management contacted four parties to determine their interest in a potential transaction with Fitbit. The Proxy does not disclose whether the parties were strategic or financial, when they were contacted and who chose those parties.

51.     The Company entered into confidentiality agreements with Party A, Party B, Party C, and Party D, and amended its confidentiality agreement with Google. According to the Proxy, none of the agreements had a standstill provision that would prevent the party from making an acquisition proposal if Fitbit entered into a merger agreement with another party. The Proxy does not disclose whether the confidentiality agreements contained standstill provisions, and if so what the exact provision allowed or restricted. Instead, the Proxy is vague about the existence of any standstill provisions.

52.     Party A was not provided with a bid process letter because it was pursuing a parallel process. The Proxy does not disclose when the parallel process began, why Party A was not included in the sales process, and what the parallel process entailed.

14

53.     Qalyst reviewed "certain financial aspects" of Google's October 2, 2019 proposal with the Board on October 10, 2019. The Proxy does not disclose whether those aspects included analyses and, if so, does not disclose the analyses.

54.     On October 13, 2019, the legal advisor for Google informed the legal advisor for Fitbit that Google wanted to negotiate post-closing employment with defendants Park and Friedman. The Proxy does not disclose whether Google had discussed employment with defendants Park and Friedman before the Board accepted its offer, or when defendants Park and Friedman were informed of Google's interest in their continued employment.

55.     The Proxy notes that the Projections had been updated to reflect the quarter ended September 28, 2019. Those updated Projections were ratified for use by Qalyst in its financial analyses. The Proxy does not disclose these updated Projections or how they differed from the Projections provided to Google.

56.     Qalyst's fairness opinion notes that Qalyst did not have a material relationship with Fitbit or Google in the two years prior to its opinion. The Proxy does not disclose how material relationship was defined or whether Qalyst had any relationship of any kind with either Google or Fitbit prior to rendering its fairness opinion.

57.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. Without all material information, Fitbit stockholders are unable to make a fully informed decision in connection with the Proposed Transaction and face irreparable harm, warranting the injunctive relief sought herein.

58.     In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

59.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information referenced above.

60.     Further, the Proxy indicates that on October 31, 2019, Qatalyst reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to Fitbit shareholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Qatalyst's financial analyses which has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

61.     Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's shareholders will continue to suffer absent judicial intervention.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9**

62.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

63.     Defendants have filed the Proxy with the SEC with the intention of soliciting Fitbit shareholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

64.     In so doing, defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Fitbit, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

65.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

66.     Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Fitbit shares and the financial analyses performed by Qatalyst in support of its fairness opinion; and (iii) the sales process.

67.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and

recommend the Proposed Transaction; indeed, the Proxy states that Qatalyst reviewed and discussed its financial analyses with the Board during various meetings including on October 31, 2019, and further states that the Board relied upon Qatalyst's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

68.    The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

69.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

70.    The Individual Defendants acted as controlling persons of Fitbit within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Fitbit and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the

various statements that Plaintiff contends are materially incomplete and misleading.

71.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

72.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

73.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

74.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

75.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate

result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the defendants jointly and severally, as follows:

A.      Declaring that this action is properly maintainable as a class action and certifying Plaintiff as class representatives and his counsel as class counsel;

B.      Preliminarily and permanently enjoining defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy;

C.      In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

D.      Directing the defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: December 12, 2019

**RIGRODSKY & LONG, P.A.**

By: _/s/ Gina M. Serra_

**OF COUNSEL:**

Brian D. Long (#4347)
Gina M. Serra (#5387)

**ROWLEY LAW PLLC**

300 Delaware Avenue, Suite 1220

Shane T. Rowley
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Telephone: (914) 400-1920
Facsimile: (914) 301-3514

Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

_Attorneys for Plaintiff_